UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

MONIQUE BUNN                              ) Action No.
                        Plaintiff          ) 19-cv-11804 (MKV)
v.                                         )  AMENDED
                                           )  VERIFIED
DAMON ANTHONY DASH,                        ) COMPLAINT
DAMON DASH STUDIOS, POPPINGTON LLC and     )
RAQUEL HORN                                )
                        Defendants         )
_____)

## JURISDICTION

1.      Jurisdiction is based on diversity of citizenship. The amount in controversy
exceeds Fifty Million Dollars ($50,000,000.00).

2.      The Court also has subject matter jurisdiction over those claims pursuant to 28 U.S.C. §
1367, because Plaintiffs claims are interrelated  and arise from a common nucleus of operative
facts such that the adjudication of all of Plaintiffs state law claims furthers the interest of judicial
economy.

## PARTIES

3.      Monique Bunn ("Bunn") is a resident of Pennsylvania and is a former resident of
New York.

4.      Damon Anthony Dash ("Dash") is a part time California resident and has an
address 13547 Ventura Blvd., Ste 199, Sherman Oaks, CA 91423. Dash is also a part
time New York State resident and upon information and belief has financial interest in
various companies that are active in New York State including Damon Dash Enterprises I
LLC (NY DOS ID 3438772), Damon Dash Promotions LLC (NY DOS ID 3176673) and
Damon Dash Music Group LLC (NY DOS ID 3396760) with a registered agent address
of  NATIONAL REGISTERED AGENTS, INC., 28 Liberty Street, New York, NY
10005. Upon information and belief, Dash is of one of the most delinquent New York
State taxpayers, owing approximately Two Million Dollars in taxes to the State of New
York for tax years 2007, 2012 and 2015. https://pagesix.com/2019/12/16/damon-dash-is-
one-of-new-yorks-top-delinquent-taxpayers-of-2019/  See Exhibit A. In the matter of
Dash v. Daniels, New York County, Supreme Court Case No. 653192/2018, Dash
indicated that he is a resident of the State of New York, in the Compliant he filed in 2018.

5.      Damon Dash Studios, damedashstudios.com ("DDS") is upon information and
belief, the alter ego of Dash and operates from the State of New York, pursuant to the
laws of the State of New York. See Exhibit B.  DDS is not and LLC, LLP or incorporated
in any state. Dash is a part time New York resident and a part time California resident.

The DDS website, Dash's alter ego, is a resident of New York and utilizes the address of 555 West 18th Street New York, New York 10011as indicated on its website.

6.      Poppington LLC ("Poppington") is a New York limited liability company, New York DOS ID 4527652. Popington was created in 2014 and Defendant Dash was a full time resident of New York in 2014.

7.      Raquel Horn ("Horn") upon information and belief, is a part time California resident and is also a part-time New York resident. Horn is an officer of Poppington and Horn's social media as of April 22, 2020, indicates that she is a resident of New York, New York.  See Exhibit C.

## FACTS

8.      In April 2019, Bunn was in contact with Dash and Horn. Dash wanted Bunn, an existing business associate, to meet with him and shoot new programming for Poppington and DDS.

9.      Bunn, is known for entertainment industry as photographer that accumulated images of prominent individuals in the hip hop culture for over twenty (20) years.  Bunn lived in New York in the 1990 and 2000s and was the owner of Monique Bunn Photography Inc., located at 148 W. 11th Street, Apt 3D, New York, NY 10026,  DOS ID # 2424688.  Bunn has photographs of Mary J. Blige, Sean "Diddy" Combs, Queen Latifah, MC Lyte, Mase, Quincy Jones, Teddy Riley,  Lil Kim, The Fugees, Missy Elliot, Xscape, Lenny Kravitz, Lyor Cohen, Russell Simmons, Lauren Hill, KRS One, Outkast, LL Cool J, Q-Tip, The Beatles and President George Bush (during his military career) and many others.

10.     In April 2019, Bunn while communicating with Dash discussed some of the services Dash wanted Bunn to provide to Poppington and DDS.

11.     In April 2019, Bunn communicated with Horn who arranged for and paid for Bunn's flight to Los Angeles to perform the services.

12.     Dash informed Bunn that all of the funds associated with Poppington and DDS are held in bank accounts owned, operated or controlled by Horn.

13.     On April 18, 2019, Bunn arrived in Los Angeles, CA. Horn ordered a LYFT and Bunn was brought to the part time Dash and Horn residence (Dash and Horn are in a relationship). Bunn is unaware of the actual address of the residence.

14.     After spending some time at the residence, Dash, Horn, Bunn and others went to the Poppington/DDS studios to begin to shoot the intellectual property Dash wanted Bunn to be involved in.

15.     There are no contracts or agreement between Bunn and any of the defendants.

16.     Bunn set up her equipment and had/left her professional and personal items at the Poppington/DDS studios. The professional and personal items that were in Bunn's possession and brought to the Poppington/DDS studios are as follows:

-Mac pro computer
-PC laptop
-Mac pro internal hard drive
-mac desktop internal hard drive
-external hard drive
-internal hard drive
-35-40 cd's of images (each hold 600 images)
-30-35 sd cards (each hold 1000+ images)
-Nikon D70
-zoom lens
-kindle tablet
-wide/fish eye lens
-handheld light meter
-digital converter box
-Final cut pro
-Office
-Photo mechanic
-varies sized printed images color and b&w
-75+ pieces of one of a kind/limited memorable and prints including never seen prints of the Beatles, Count Basie and President Bush during his military career.
-3 wrapped bundles of personal/work projects
-irreplaceable WWII/ Korea/ Vietnam Wallet
-bank cards and personal info
-jewelry bag
-diamond earrings
-diamond ring
-diamond bracelet

17.     Dash and others begin to interview various women for projects while the parties were at the Poppington/DDS studios. Bunn setup her equipment and began to get a feel of what the defendants were requesting of her.  At the conclusion of the evening Dash and others brought Bunn back to the Dash residence where Bunn was staying during the trip. Bunn's equipment and many personal items remained at the defendants studios after Bunn left the studios on April 18, 2019.

18.     Upon arriving at the Dash residence, Bunn was informed that she was staying in Dash's daughter's room.

**Sexual Assault of April 18, 2019**

19.     While Bunn was at the Dash residence on April 18, 2019, in the late evening, Dash sexually assaulted Bunn. While Bunn was sleeping, Dash approached Bunn and placed his hand on Bunn's breasts and placed hands/fingers on Bunn's buttocks. Dash did not have the permission or consent to touch Bunn's sexual organs.  Dash was wearing a robe and had no underwear on. Dash had been drinking alcohol and smoking marijuana all day.

20.     Upon waking up due to the unauthorized touching by Dash, Bunn was able to get Dash's hands off her breasts and buttocks.  Dash backed up and asked Bunn "what are you doing?" Bunn responded and said "I am sleeping" and "I will fight you" to Dash. Dash then left the room.

21.     Bunn was angry and frustrated by Dash's offensive and unwanted touching. Bunn stayed at the Dash residence and did not sleep that evening.

**Events of April 19, 2019**

22.     The following day, April 19, 2019, Bunn needed additional equipment to perform the on screen talent and photography services the Defendants wanted Bunn to perform. Dash informed Bunn that he had a deal with WETV and that the parties were going to do a docu-series based around Bunn.

23.     The reality of the situation is that Dash did not have a deal with WETV associated with Bunn and only wanted to keep  Bunn silent about the events of April 18, 2019.

24.     On April 19, 2019, the Defendants brought Bunn to the Apple Store and purchased approximately $3,000.00 worth of equipment. The Dash Chauffeur that brought Bunn to the Apple Store had the Poppington credit card and contacted Horn in order to provide the pin code to complete the purchase of the items.

25.     Bunn brought the equipment back to the Poppington/DDS studios in order to prepare for the services to be provided. After wrapping for the evening, Bunn brought the Apple Store items to the Dash residence.

**Events of April 20, 2019**

26.     Bunn spent most of April 20, 2019 preparing to shoot that evening for Poppington/DDS. During the evening of April 20, 2019 around 11:00pm, Dash, Bunn and Horn then discussed the Apple Store purchase as Horn was unhappy with the amount. Bunn informed Horn that Dash was aware of the purchases and approved them as it was related to the services to be provided for the defendants.

27.     Bunn, not wanting to make matters worse, provided Horn with the items purchased from the Apple Store as both Dash and Horn were intoxicated/high and Dash was being belligerent. Dash and Horn had been looking forward to doing "mushrooms" on April 20, 2019 and had sent an assistant to obtain more marijuana earlier in the day.

28.    Minutes later, the Dash Chauffeur approached Bunn and informed her that Dash and Horn wanted her to leave the premises.  The defendants were sending Bunn to a hotel and called Bunn an Uber/LYFT. The defendants refused to allow Bunn to obtain her equipment and personal items that remained at the Poppington/DDS studios.

29.    The Defendants informed Bunn that they would send Bunn her belongings the following week (after Easter 2019).

30.    On several occasions, Bunn has requested that the Defendants return her belongings. On April 29, 2019, Bunn texted Dash and asked for her belongings.  See Exhibit D.  To date, the Defendants have not returned Bunn's belongings.

31.    Bunn, a photographer, has been unable to perform any photography services due to the actions of the Defendants and has lost substantial wages of approximately Eighty-Five Thousand Dollars ($85,000.00).

32.    The Defendants have converted all of the personal, tangible and intangible property of Bunn and have deprived Bunn of their use and value.

**Material on Drives/Computers**

33.    On the drives owned by the Plaintiff were over twenty (20) years of hip-hop culture photography and other items. The Defendants have stolen photographs of Mary J. Blige, Sean "Diddy" Combs, Queen Latifah, MC Lyte, Mase, Quincy Jones, Teddy Riley,  Lil Kim, The Fugees, Missy Elliot, Xscape, Lenny Kravitz, Lyor Cohen, Russell Simmons, Lauren Hill, KRS One, Outkast, LL Cool J, Q-Tip, The Beatles and President George Bush (during his military career) and many others.

34.    The Defendants have converted over 100,000 photographs, Bunn's personal belongings, and professional photography equipment.

35.    In Bunn v. Bad Boy Entertainment Inc. et al., New York Supreme Court, Index No. 103952/99, Bunn obtained a judgment in the litigation and the Court held that each of Bunn's slides/photos had a minimum reasonable value of $500.00 per photo.   Dash and the Defendants have stolen and converted over 100,000 photos of Bunn with an estimated value in excess of Fifty Million Dollars ($50,000,000.00). The value of Bunn's drives, photography equipment and personal items are approximately Twenty-Six Thousand Dollars ($26,000.00).

36.    While in California, Bunn was going to meet with Rhino Records ("Rhino"). Rhino wanted to discuss licensing Bunn's "Bad Boy" photos which included Sean "Diddy" Combs, Christopher Wallace p/k/a "The Notorious BIG/ Biggy Smalls"), Lil Kim and others.  Rhino also wanted to discuss the licensing of Bunn's photos for the artist known as Ol' Dirty Bastard of the Wu Tang Clan. Due to the actions of the Defendants, Bunn was deprived of the opportunity to meet with Rhino.

37.     Plaintiff called the Burbank Police Department on May 15, 2019 to report the events and seek the return of her property.  Upon information and belief, Bunn was informed that she would need to appear in California to take action.  Bunn has been unable to return to California.

38.     On May 31, 2019, the Defendants took one of Plaintiff's previously licensed photographs depicting entertainment mogul Russel Simmons, music executive Lyor Cohen, entertainment mogul Jay-Z, musical artist Ja Rule, Dash and others. It is the only picture of its kind. The Defendants posted the picture on all of their social media platforms without licensing the work from Bunn. See Exhibit E.  The rare photograph was taken by Bunn and the Defendants have converted the photograph for their own gain.

## COUNT I
## CONVERSION
## AGAINST ALL DEFENDANTS

39.     Plaintiff repeats and realleges each of the preceding paragraphs 1-38 above.

40.     Conversion claims in New York and California may be predicated upon a Defendant's wrongful dominion over plaintiff's tangible or intangible personal property. Thyroff v. Nationwide Mutual Ins. Co., 864 N.E.2d 1272, 1278 (N.Y. 2007).

41.     To establish a cause of action in conversion, the Plaintiff must show (i) legal ownership or an immediate superior right of possession to specific identifiable personal property, and (ii) the defendant exercised an unauthorized dominion over the property in question to the exclusion of the plaintiff's rights. Korangy Publishing, Inc. v. Miceli, 2009 WL 586131, at *4 (N.Y. Sup. 2009); Five Star Bank v. CNH Capital America, LLC, 865 N.Y.S.2d 190, 192 (App. Div. 4 Dept. 2008).

42.     Plaintiff is the legal owner of over 100,000 photos, personal belongings and professional photography equipment.

43.     The Defendants have exercised unauthorized dominion over Plaintiff's items in violation and exclusion of Plaintiff's rights.

44.     As a result of Defendants' actions, Plaintiff has been forced to place her home on the market and struggled to support her children. Plaintiff has been harmed by the Defendants actions.

**COUNT II**
**CIVIL ASSAULT- SEXUAL BATTERY**
**AGAINST DAMON DASH**

45.     Plaintiff repeats and realleges each of the preceding paragraphs 1-38 above.

46.      Sexual assault and battery claims in California give rise to civil liability for money damages are clearly provided for by statute.

47.     In order to be liable for sexual assault under California law a plaintiff, must show three elements as follows:

> ONE: That the defendant(s) (persons against whom the action is brought, intended to cause a harmful or offensive contact with plaintiff's "sexual organ, anus, groin, buttocks or breast", and a sexually offensive contact with plaintiff resulted, either directly or indirectly; [OR] That defendant(s) intended to cause a harmful or offensive contact with plaintiff by use of defendant(s)'s sexual organ, anus, groin, buttocks, or breast, and a sexually offensive contact with plaintiff resulted, either directly or indirectly; [OR] That defendant(s) "caused an imminent fear of a harmful or offensive contact" with plaintiff's sexual organ, anus, groin, buttocks or breast …

> TWO: Plaintiff did not consent to the touching; and

> THREE: Plaintiff was harmed or offended by defendant's conduct.

48.     In order to establish civil assault in California, a plaintiff must prove all the following elements:

- The defendant acted with the intention to cause harmful or offensive contact
- Plaintiff reasonably believed that she was about to be touched in a harmful or offensive manner or threatened to touch in a harmful or an offensive manner
- It reasonably appeared to the plaintiff that the defendant was about to carry out the threat
- Plaintiff did not consent to the defendant's conduct
- Plaintiff was harmed
- Defendant's conduct was a substantial factor in causing harm to the plaintiff

49.     In April 2019, Dash sexually assaulted Bunn in California at Dash's residence.  While Bunn was sleeping when Dash approached Bunn and placed his fingers/hands on Bunn's breasts and buttocks. Dash did not have the permission or consent to touch Bunn's sexual organs and private areas.

50.    On April 19, 2019, while Bunn was sitting down at the Dash residence, Dash walked next to her and stood about one (1) foot away from Bunn. Dash did not have any underwear on and placed his penis around Bunn's eye level. This action occurred in front of several individuals including Horn. Horn, an officer of Poppington, failed to attempt to correct the actions of Dash.

51.    Dash's actions were unwanted, outrageous and negligent.  Dash's actions were intentional and were an offensive touching.

52.    Dash actions have caused Bunn harm and constitute a sexual battery and civil assault.


### COUNT III
### NEGLIGENCE-(RELATING TO CIVIL ASSAULT SEXUAL BATTERY)
### AGAINST POPPINGTON LLC and DDS


53.    Plaintiff repeats and realleges each of the preceding paragraphs 1-38, 45-52 above.

54.    Dash is the Chief Operating Officer of Poppington and the owner of DDS.

55.    In April 2019, Dash sexually assaulted Bunn in California at Dash's residence. On April 19, 2019, while Bunn was sitting down at the Dash residence, Dash walked next to her and stood about one (1) foot away from Bunn. Dash did not have any underwear on and placed his penis around Bunn's eye level. This action occurred in front of several individuals including Horn. Horn, an officer of Poppington, failed to attempt to correct the actions of Dash.

56.    In 2003 in the Supreme Court of New York, Kristie Thompson ("Thompson") sued Dash for sexual assault alleging $15 Million Dollars in damages. Dash denied the allegations, however, upon information and belief, Dash reached an out of court settlement with Thompson.

57.    Upon information and belief, Poppington's clothing line, "Black Star" was named after Dash's penis, the nick-name Dash calls his sexual organ.

58.    T. Harper, also contends that Dash sexually assaulted her and caused her emotional distress. See Exhibit F.

59.    Upon information and belief, Dash is a sexual predator.

60.    Poppington and DDS, are aware of Dash's previous past acts and failed to inform Bunn of Dash's history. Poppington and DDS had a duty to inform Bunn of Dash's sexual misconduct and failed to supervise Dash.

61.    Poppington and DDS are responsible for the actions of Dash. Poppington and DDS "aided and abetted" Dash and were negligent by ignoring his actions and "repeated acts of sexual

8

misconduct". Poppington and DDS failed in their duty to inform Bunn of Dash's sexual misconduct.

62.     Defendants Poppington and DDS acted with malice and/or with conscious disregard to Plaintiff's safety associated with Dash's sexual misconduct.

63.     Defendants Poppington and DDS have been negligent by ignoring Dash's behavior and have done nothing to stop Dash from engaging in future incidents of sexual misconduct.

64.     Poppington and DDS are responsible for the harm caused to Bunn and the defendants failed to correct Dash's actions and knew Dash was a sexual predator.

65.     Due to the negligence of Poppington and DDS, Bunn has been damaged.

### COUNT IV
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS UNDER CALIFORNIA LAW (RELATING TO SEXUAL ASSAULT) AGAINST DAMON DASH

66.     Plaintiff repeats and realleges each of the preceding paragraphs 1-18, 24-38 and 45-52 above.

67.     A plaintiff is the direct victim of negligent infliction of emotional distress if (1) The defendant was negligent, and (2) As the result of the defendant's negligence, the plaintiff suffered emotional distress. Molien v. Kaiser Foundation Hospitals, 27 Cal.3d 916 (1980).

68.     Dash knowingly and intentionally engaged in the offensive touching of the Plaintiff's breast and buttocks.

69.     The actions of the defendants have caused Bunn serious emotional distress under California law.

### COUNT V
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS UNDER CALIFORNIA LAW (RELATING TO TANGIBLE AND INTANGIBLE PROPERTY) AGAINST ALL DEFENDANTS

70.     Plaintiff repeats and realleges each of the preceding paragraphs 1-18, 24-44 above.

71.    A plaintiff is the direct victim of negligent infliction of emotional distress if (1) The defendant was negligent, and (2) As the result of the defendant's negligence, the plaintiff suffered emotional distress. <u>Molien v. Kaiser Foundation Hospitals</u>, 27 Cal.3d 916 (1980).

72.    Defendants jointly decided to deprive Bunn of her personal and professional items in order to harm Bunn.

73.    Defendants knew that depriving Bunn of her equipment would hinder Bunn from supporting her family.  Defendants purposely kept Bunn from selling her photographs and from performing services in the photography industry, her chosen profession.

74.    The actions of the defendants have caused Bunn serious emotional distress under California law.

**COUNT VI**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS UNDER PENNSYLVANIA LAW (RELATING TO TANGIBLE AND INTANGIBLE PROPERTY)**
<u>**AGAINST ALL DEFENDANTS**</u>

75.    Plaintiff repeats and realleges each of the preceding paragraphs 1-18, 24-44 above.

76.    A plaintiff is the direct victim of negligent infliction of emotional distress if (1) The defendant was negligent, and (2) As the result of the defendant's negligence, the plaintiff suffered emotional distress.

77.    Defendants jointly decided to deprive Bunn of her personal and professional items in order to harm Bunn.

78.    Defendants knew that depriving Bunn of her equipment would hinder Bunn from supporting her family.  Defendants purposely kept Bunn from selling her photographs and from performing services in the photography industry.

79.    The actions of the defendants has caused Bunn serious emotional distress under Pennsylvania law.

WHEREFORE, The Plaintiffs demand a jury trial and the following:

1.    Judgment on all counts and amount to be determined by the Court;
2.    Interest;
3.    Attorneys Fees;
4.    Compensatory, Treble and Punitive damages; and,
5.    Any other relief this Court deems just and equitable.

MONIQUE BUNN
By Her Attorneys,

Christopher Brown
CB3465
Brown & Rosen LLC
Attorneys At Law
100 State Street, Suite 900
Boston, MA 02109
617-728-9111 (T)
Dated: April 23, 2020                          cbrown@brownrosen.com


## VERIFICATION

I, Monique Bonn, the Plaintiff, declare under oath that the above facts are true to the best of my knowledge.

Dated this 23 day of April 23,2020

Plaintiff:

_____
Monique Bunn

11

# EXHIBIT A

# Damon Dash is one of New York's top delinquent taxpayers of 2019

By Mara Siegler



*Damon Dash Getty Images*

They're making a list, they're checking it twice — and this is who the bean counters say have been naughty this year.

New York state has released its list of the top 250 delinquent taxpayers of 2019, and it's littered with boldface names.

Damon Dash — the former music mogul who was arrested in November for allegedly owing more than $400,000 in child support — comes in at No. 40, according to the Department of Taxation and Finance.

Dash has been on the list for several years, including 2007, 2012 and 2015, and his total outstanding balance rings in at over $2 million.

Restaurateur Nello Balan — the former owner of pricey Upper East Side Italian spot Nello, and also a regular on the list — comes in at No. 43, owing more than $2 million.

Balan's financial woes have been a Page Six staple. His post-Nello company, Be My Guest LLC — which was supposed to open a space on West 58th Street, but became locked in a vicious legal battle with the former occupant — filed for bankruptcy in 2007. And an outpost of Nello in Aspen, Colo., was shuttered in 2016 after six months with more than $300,000 in liens from suppliers, according to local reports.

Balan said via email: "It is wrong, my ex-associate owns that, my account is doing an audit."

Also on the list is Jason Apfelbaum, former owner of Midtown theatrical dining experience Sushi Roxx. In July 2018, Page Six reported that the restaurant unexpectedly shuttered and that the staff's paychecks bounced. "He went completely MIA," said a source at the time. "He seriously just ghosted."

Apfelbaum owes $726,558.37.

Beyond New York, Tori Spelling and her husband, Dean McDermott, are listed on the government's 500 largest tax delinquencies over $100,000.

Reps didn't get back to us.

Filed under damon dash ,  nello balan ,  taxes ,  tori spelling
**Share this article:**
**Share this:**

- Click to share on Facebook (Opens in new window)
- Click to share on Twitter (Opens in new window)
- Flipboard

# EXHIBIT B



**‧‧‧I AT&T 5G E**     7:45 PM     74% ▬

<     **Photo**     ↺

 **duskopoppington**     •••



♡   ◯   ◁     🔖

**756 likes**

**duskopoppington** April 3rd we go live ... #staytuned @damedashstudios availible on most platforms ... @rokuplayer @itunes @google.play.store @android @amazonfiretv

← ✕

# Sign up to Dame Dash Studios

Get unlimited access on all your devices by choosing an auto-renewing subscription plan.

**$49.99 / year**
7-Day Free Trial

**$7.99 / month**
7-Day Free Trial

Dame Dash Studios will charge the membership fee to your iTunes account on a recurring basis until you cancel. Payments will continue unless you deactivate at least 24-hours prior to the end of the current cycle. Any unused portion of your free trial will be forfeited upon payment. You can cancel auto-renew in your iTunes account settings.

By subscribing, you agree to our Terms of Service, Cookie Policy & Privacy Policy and represent that you are at least 16 years of age.

Need help? Contact us





# DAME DASH STUDIOS

## Start watching Dame Dash Studios

Start exploring our catalog of videos for free or subscribe to instantly start watching.

**Start free trial**

**Sign in**

Restore iTunes subscription

v4.920.2 (1377)

🔒 **damedashstudios.com**

have the right to a fair hearing before a neutral arbitrator and the opportunity to participate in the process of choosing the arbitrator. The arbitrator shall have the right to award all remedies that court may award.

**Court Proceedings**: Any proceeding to enforce this arbitration agreement, including any proceeding to confirm, modify, or vacate an arbitration award, may be commenced in any court of competent jurisdiction. In the event that this arbitration agreement is for any reason held to be unenforceable, any litigation (except for small-claims court actions) shall be commenced only in the federal or state courts located in New York County, New York. You hereby irrevocably consent to the jurisdiction of those courts for such purposes an action and, to the extent permitted by law, both Vimeo and you WAIVE ANY RIGHT TO A TRIAL BY JURY in such an action.

**Governing Law**: This Agreement shall be governed by the laws of the state of New York without regard to principles of conflicts of law, provided that this arbitration agreement shall be governed by the Federal Arbitration Act. The Uniform Commercial Code, the Uniform Computer Information Transaction Act, and the United Nations Convention of Controls for International Sale of Goods shall not apply.

## GENERAL TERMS

**No Waiver**: The failure of Vimeo (or any Producer)

# EXHIBIT C



# Raquel M Horn



# EXHIBIT D



# EXHIBIT E



# EXHIBIT F

# AFFIDAVIT OF T. HARPER