1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

MONIQUE BUNN,

               Plaintiff,

     v.

DAMON ANTHONY DASH, et al.,

               Defendants.

)
)
)
)
)
)
)
)
)
)
)

Case No. CV 20-7389-DMG (JCx)

**ORDER RE PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY
JUDGMENT [119]**

     Before the Court is Plaintiff Monique Bunn's Motion for Partial Summary Judgment. [Doc. # 119 ("MSJ").] The MSJ is fully briefed. [Doc. ## 123 ("Opp."), 124 ("Reply").] For the following reasons, the Court **GRANTS in part** and **DENIES in part** Bunn's MSJ.

## I.

## PROCEDURAL BACKGROUND

     Bunn initiated this action on December 26, 2019 in the Southern District of New York. [Doc. # 1.] She filed the operative First Amended Complaint ("FAC") on April 23, 2020 against Defendants Damon Dash, Damon Dash Studios ("DDS"), Poppington LLC, and Raquel Horn. [Doc. # 49.] The FAC alleges claims for sexual battery against Dash,

negligence against Poppington and DDS, and conversion and negligent infliction of emotional distress against all Defendants.  The action was transferred to this Court on August 10, 2020.  [Doc. # 68].

Bunn filed the instant MSJ on March 31, 2021, seeking summary judgment only on her conversion claim against all Defendants.

## II.

## FACTUAL BACKGROUND[1]

Bunn is a photographer in the entertainment industry and resides in Pennsylvania. Bunn Decl. ¶¶ 1-2 [Doc. # 121].  Dash and Horn together operate a production studio in Sherman Oaks, California through Poppington, their limited liability company.  SUF 3, 10[2]; Dash Decl. ¶ 2 [Doc. # 123-3][3]; Horn Decl. ¶¶ 2-3 [Doc. # 123-4].[4]

---

[1] The Court discusses only those facts relevant to the conversion claim, the only claim at issue in this motion.  The facts are uncontroverted unless otherwise noted.  The Court will address the parties' evidentiary objections as they arise in the discussion.  To the extent any objected-to evidence is not discussed, the objections are **OVERRULED** as moot.

[2] The Court refers to the document containing Defendants' responses for Plaintiff's Statement of Undisputed Facts ("SUF").  [*See* Doc. # 123-1].

[3] Dash claims in his declaration that he is "neither a member nor the Chief Executive Officer of Poppington, LLC." Dash Decl. ¶ 3.  In the immediately preceding paragraph, however, he says, "I have a separate, limited liability company" with the same address that he does not dispute belongs to Poppington.  *Id.* ¶ 2.  He also previously testified in a separate trial to owning Poppington, and is listed on Poppington's corporate filing with the California Secretary of State as its CEO.  *See* Brown Decl. ¶ 2, Ex. 1 at 24; *id.* at ¶ 4, Ex. 3 [Doc. # 124-1].  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

[4] Bunn does not define DDS's status in her moving papers, other than to refer to the studios as belonging to "Poppington/DDS."  *See, e.g.*, SUF 10.  In the FAC, she alleges that DDS is an alter ego of Dash and is not incorporated nor is it a limited liability company or limited liability partnership.  FAC ¶ 5.  In their Answer, Defendants deny the existence of DDS as an entity.  Answer ¶ 6 [Doc. # 79].  Since the parties appear to agree that DDS is not an independent legal entity, summary judgment against it is **DENIED** and the Court *sua sponte* **DISMISSES** it from this action.

In April 2019, Dash and Horn invited Bunn to come to Los Angeles for a photography shoot and asked her to bring a collection of her past photographs.  Bunn Decl. ¶ 3.  Bunn arrived in Los Angeles on April 18, 2019.  *Id.* ¶ 5.  After briefly visiting Dash and Horn at their home,[5] Bunn went with them to the Poppington studio.  *Id.* at ¶ 6.  She brought with her a host of personal items, including two laptop computers, photography equipment, and CDs and hard drives that collectively contained over 100,000 photographs.  *Id.* at ¶¶ 7, 16-17.  After a few hours at the studio, the three returned to Dash's residence, where Bunn would be staying during her time in Los Angeles.  *Id.* ¶ 8.  Bunn left her belongings behind at the studio in a locked office space provided by Dash and Horn.  *Id.*

The next day, according to Bunn, it was agreed that Bunn needed to purchase additional equipment to complete the photo shoot.  *Id.* at ¶ 9.  Dash and Horn gave her Poppington's credit card and had their driver take Bunn to the Apple store, where she purchased approximately $3,000 worth of equipment.  *Id.* at ¶ 10.  According to Bunn, Horn was unhappy with the cost of the purchase and became upset.  *Id.* at ¶ 11.  On the evening of April 20, 2019, Dash and Horn kicked her out of the house and sent her to a hotel.  She asked them if she could return to the studio to retrieve her belongings, but they refused.  *Id.* at ¶ 12.  They assured her that they would send her belongings to her the following week.  *Id.* at ¶ 13.

According to Dash, Bunn made unauthorized purchases on the Poppington card and then was caught trying to steal the purchased items, which is why Dash and Horn asked her to leave.  Dash Decl. ¶ 7.  Dash acknowledges that he told Bunn he would make arrangements to have her belongings returned to her.  *Id.* at ¶ 8.

On April 29, 2019, Bunn texted Dash requesting that her belongings be returned, but he did not respond.  Bunn Decl. ¶ 14, Ex. 1.

---

[5] Bunn suggests, and Defendants do not dispute, that Dash and Horn live together and are romantic partners as well as business partners.  *See* Bunn Decl. ¶¶ 4, 6.

### III.

### LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e)); *see also Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (*en banc*) ("Rule 56 requires the parties to set out facts they will be able to prove at trial."). "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir.

### IV.

### DISCUSSION

"Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Lee v. Hanley*, 61 Cal. 4th 1225, 1240 (2015). The parties do not dispute the first element, that Bunn owned the property at issue. The Court therefore addresses only the other two elements.

-4-

## A.     Wrongful Act or Disposition of Property

A defendant wrongfully dispossesses a plaintiff of her property if he knowingly or intentionally substantially interferes with it by *either* (1) taking possession of it, (2) preventing the plaintiff from accessing it, (3) destroying it, or (4) refusing to return it after the plaintiff demands its return.  California Civil Jury Instructions No. 2100.  Property obtained lawfully can nonetheless be converted if the defendant refuses to turn over possession upon demand.  *Cerra v. Blackstone*, 172 Cal. App. 3d 604, 609 (1985).

Here, it is uncontroverted that Defendants had possession of Bunn's property, asked her to leave while assuring they would ship her belongings to her, then failed to do so upon Bunn's request.  Defendants quibble with some extraneous details, *see* Opp. at 11-12,[6] but they do not actually dispute this basic premise.  Dash and Horn both state in their declarations, "At no time did I [or Poppington][7] refuse to permit Ms. Bunn to retrieve her items."  Dash Decl. ¶ 8; Bunn Decl. ¶ 4.  But this blanket statement does not genuinely controvert the fact that they assured Bunn they would return her items, then did not do so, even after she followed up.  Even if Bunn could have gone straight to the studio to collect her items after being asked to leave Dash's house—viewing the facts in the light most favorable to Defendants—she relied upon their promise that they would ship the items to her.  Perhaps at the moment Bunn left town, Defendants had not yet dispossessed Bunn of the property.  But when she demanded its return a week later, as she was promised, and Defendants failed to do so, they dispossessed her of her belongings.  Their failure need not have been an affirmative act, nor was Bunn required to attempt to retrieve the property herself after asking for its return, in order establish a conversion claim.  *See Schroeder v. Auto Driveaway Co.*, 11 Cal. 3d 908, 918 (1974) ("Where B is in possession of the property

---

[6] All page references herein are to the page numbers inserted by the CM/ECF system.

[7] Horn's declaration adds "or Poppington"—otherwise, the two statements are identical.

-5-

1   . . . and A demands it, and B fails to deliver it, no modern court is going to save B from
2   being a converter on the ground that there was only a nonfeasance.") (citation omitted).

3        Dash and Horn attest that they made efforts to return Bunn's property through their
4   counsel, and Defendants' counsel attempts to introduce evidence of his negotiations with
5   Bunn's counsel after the litigation was filed surrounding the property's return.  Dash Decl.
6   ¶ 8; Horn Decl. ¶ 4; Traylor Decl. ¶¶ 2-3, Ex. A [Doc. # 123-5].  Bunn objects to this
7   evidence as violative of Federal Rule of Evidence 408, which makes inadmissible evidence
8   of settlement negotiations to prove or disprove the validity or amount of a claim.  The
9   objection is **OVERRULED as moot**.  Even if the evidence were considered, the fact that
10  Defendants made offers to return the property months later is immaterial.  The
11  dispossession of property need not be permanent to constitute conversion.  *See Enter.*
12  *Leasing Corp. v. Shugart Corp.*, 231 Cal. App. 3d 737, 748 (1991) ("[T]the fact that
13  plaintiff regained possession of the converted property does not prevent him from suing
14  for damages for the conversion.").

15       Finally, Defendants argue that Bunn has not established liability against each and all
16  particular Defendants.  Opp. at 14.  The Court disagrees.  It is uncontroverted that Dash
17  and Horn together invited Bunn to the studio owned by their LLC.  Bunn left her items in
18  a locked room on property belonging to Poppington.  Dash and Horn then jointly demanded
19  that Bunn leave their house, while promising they would ship her items to her, which they
20  did not do.  These facts are sufficient to make Dash, Horn, and their corporation,
21  Poppington, jointly and severally liable for conversion.  *McCafferty v. Gilbank*, 249 Cal.
22  App. 2d 569, 576 (1967) ("Where the conversion is the result of the acts of several persons,
23  which, though separately committed, all tend to the same end, there is a joint conversion.")
24  (citation omitted).

25       In sum, it is uncontroverted that Dash, Horn, and Poppington each participated in
26  obtaining Bunn's property and then failed to return it upon request.  This conduct satisfies
27  the disposition element of the conversion claim.

28

**B.      Damages**

Bunn claims that her conversion claim is worth $50,026,000.  She reaches this sum by asserting that each of the 100,000 photographs contained in her hard drives is worth $500 a piece, and that the photography equipment and other items are worth approximately $26,000.  *See* MSJ at 8-9.

As for the photographs, Bunn bases their valuation on a judgment she earned for her work in a 2000 lawsuit in the New York Supreme Court, *Bunn v. Bad Boy Entertainment Inc., et al.*, Case No. 103952/99, where the court awarded her $500 each for 80 photography slides.  *See* Bunn Decl. ¶ 18, Ex. 2.  In that case, the defendant lost the slides, and the parties had an agreement that there would be a charge of $500 per slide if any were lost.  *Id.* at 3-4.  The 80 slides had been selected as the best photographs from a photography session.  *Id.* at 3.

The situation is completely different here.  The 100,000 photographs are not a preselected "best"—they are Bunn's entire catalog.  There is no agreement between Bunn and Defendants over the value of the photographs.  That Bunn was able to sell some of her photographs for $500 does not mean that all photographs she ever took are worth $500.  Some could be worth more, and likely many are worth less.

As for the physical items, Bunn simply speculates that they are worth $26,000.  She lists a couple dozen items in exceedingly generic terms (*e.g.*, "PC laptop," "zoom lens," and "diamond earrings"), without providing brands, models, dates of purchase, or individual purchase prices.  *See* Bunn Decl. ¶ 7.  She provides some pictures of the items, which are also not very helpful in terms of assessing a value.  *Id.* at ¶ 27.

The usual presumed measure of damages in a conversion claim is the fair market value of the converted property.  *Lueter v. State of California*, 94 Cal. App. 4th 1285, 1302 (2002).  Bunn has not established the fair market value of her converted property.

# V.

## CONCLUSION

In light of the foregoing, Bunn's MSJ is **GRANTED in part** and **DENIED in part**. On the first two elements of her conversion claim—her right to possession and Defendants' wrongful disposition of the property—the Court **GRANTS** summary adjudication in Bunn's favor.   On the element of damages, Bunn's MSJ is **DENIED**.   A triable issue remains as to the amount of damages Bunn is entitled from her claim.

The Court finds Bunn's MSJ appropriate for decision without oral argument.  Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.  Therefore, the April 30, 2021 hearing is **VACATED**. **IT IS SO ORDERED.**

DATED:  April 28, 2021

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE