UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

_____

MONIQUE BUNN                                    )
               Plaintiff,                        ) 2:20 cv-07389-DMG-JC
v.                                              ) 2:20 cv-11633-DMG-JC
                                                )
DAMON ANTHONY DASH,                             )
DAME DASH STUDIOS, POPPINGTON                   )
LLC and RAQUEL HORN                             )
               Defendants.                       )
_____)


**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT**
**OF MOTION FOR SUMMARY JUDGMENT ON SEXUAL/CIVIL**
**BATTERY, EMOTIONAL DISTRESS AND DEFAMATION CLAIMS**

Dina Adham, Esq.
Law Offices of Dina Adham
1230 Rosecrans Avenue, Suite 300 PMB #698
Manhattan Beach, CA 90266
(310) 384-0843
dadham@adhamlawgroup.com
Christopher Brown
Brown & Rosen LLC
100 State Street, Suite 900
Boston, MA 02109
617-728-9111
cbrown@brownrosen.com

*Counsel for Plaintiff*

June 25, 2021

1

# TABLE OF CONTENTS

TABLE OF CONTENTS                                                          2

I.INTRODUCTION                                                            5

II.ARGUMENT                                                               5

A. Summary Judgment Standard                                             5

B. There Is No Disputed Issue Of Fact That Dash Sexually
Assaulted Bunn                                                           6

C. There Is No Disputed Issue Of Fact That Dash Caused Bunn
Emotional Distress Relating To The Sexual Battery                       10

D. Defendants Dash and Poppington Have Defamed Bunn By
Accusing Her Of Criminal Conduct                                        11

E. Poppington and Horn Aided and Abetted The Sexual Assault
Of Bunn Committed By Dash                                               14

F.The Dash Group LLC Is A Successor To Poppington LLC
And Is Liable For Its Wrongdoing                                         16

G.Poppington LLC Has Engaged In De facto Merger
With The Dash Group LLC                                                  17

III.CONCLUSION                                                           21

# TABLE OF AUTHORITIES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242(1986)                     5,6

*Angie M. v. Superior Court* (1995) 37 Cal.App.4th 1217                   7

*Ark.-Tenn Distributing Corp. v. Breidt*, 209 F.2d 359 (3d Cir. 1954)    8

*Aronson v. Wiersma*, 65 NY2d 592 (1985)                                 11

*Cadlo v. Owens-Illinois, Inc.* (2004) 125 Cal.App.4th 513,
[23 Cal.Rptr.3d 1]                                                        15,16

*Casey v. U.S. Bank Nat. Assn.* (2005) 127 Cal.App.4th 1138              15

*Chavers v. Gatke Corp.* (2003) 107 Cal.App.4th 606
[132 Cal.Rptr.2d 198]                                                    15

*Clemente v. Espinosa*, 749 F. Supp. 672 (E.D. Pa. 1990)                 12

*Farber v. Jefferys*, 33 Misc 3d 1218[A], 2011 NY Slip Op
51966[U], *15 [Sup Ct, NY County 2011], affd 103 AD3d 514
(1st Dept 2013), lv denied 21 NY3d 858(2013)                             11

*Fiol v. Doellstedt* (1996) 50 Cal.App.4th 1318,
[58 Cal.Rptr.2d 308]                                                     15

*John Deere Shared Services Inc. v. Success Apparel LLC*,
2015 WL 6656932 (S.D.N.Y. Oct. 30, 2015)                                 17,18

*Kasem v. BNC Stor., LLC,* 30 AD3d 469 [2d Dept. 2006]                   17

*K.T. v. Dash,* 2006 NY Slip Op 09393 [37 AD3d 107]
December 14, 2006                                                        15

*Mallory v. S & S Publishers*, 260 F. Supp. 3d 453, 465 (E.D.
Pa. May 9, 2017), aff'd sub nom. *Mallory v. Simon & Schuster, Inc.*,
No. 17-2239, 2018 WL 1559926 (3d Cir. Mar. 29, 2018)                     11

*Marks v. Minnesota Mining & Mfg. Co.*, 232 Cal. Rptr. 594 (1986)       18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
485 U.S. 574, 586 (1986)                                                          6

*Milliken & Co. v. Duro Textiles, LLC,* 451 Mass. 547 (2008)                     17

*Molien v. Kaiser Foundation Hospitals*, 27 Cal.3d 916 (1980)                    10

*Navarrete v. Meyer*, (2015) 237 Cal.App.4th 1276
[188 Cal.Rptr.3d 623]                                                            14

*Orser v. George*, (1967) 252 Cal.App.2d 660[60 Cal.Rptr. 708]                   14

*Saunders v. Superior Court* (1994) 27 Cal.App.4th 832
[33 Cal.Rptr.2d 438]                                                             15

*Schumacher v. Richards Shear Co.*, 59 N.Y. 2d 239 (1983)                        18

*Steinhilber v. Alphonse*, 68 NY2d 283 (1986)                                    11

*The Dash Group LLC v. Brooks*, 20-cv-10671 (JSR) (SDNY)                         19,20

*United States v. Lemons*, 125 F.Supp. 686 (W.D.Ark. 1954)                       8

*Wellness International Network Ltd. v. Sharif*,
135 S. Ct. 1932 (2015)                                                          18

Rules and Statutes

California Civil Code section 1708.5                                             6,7

F.R.C.P. 56                                                                      5

F.R.C.P. 36                                                                      8,13

4 *Moore's Federal Practice* 36.08 (2d ed. 1966 Supp)                            8

42 Pa. Cons. Stat. Ann. § 8343(b)(1)                                            11

Rest.2d Torts, § 876                                                            14,15

## I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 56, MONIQUE BUNN ("Plaintiff" or "Bunn") hereby moves this Court for Summary Judgment against Defendants DAMON ANTHONY DASH ("Dash"), POPPINGTON LLC ("Poppington"), and RAQUEL HORN ("Horn") and THE DASH GROUP LLC ("The Dash Group LLC")(collectively "Defendants") relating to Bunn's claim for sexual assault, emotional distress and defamation of character.  There is no dispute that Defendant Dash sexually assaulted Bunn, Defendants Horn and Poppington aided and abetted Dash's sexual assault, and all Defendants defamed Bunn for filing a lawsuit.  Bunn is entitled to summary judgment of these issues and will seek trial solely regarding damages.

## II.    ARGUMENT

### A.    <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56 provides the authority to grant summary judgment when the submissions in the record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  F.R.C.P. 56.  The threshold inquiry is whether a trial is necessary, i.e. whether there are any genuine factual disputes that require resolution by a finder of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 485 U.S. 574, 586 (1986). If the opposing party's "evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.

**B.** **There Is No Disputed Issue Of Fact That Dash Sexually Assaulted Bunn**

Plaintiff's Declaration as well as the Requests for Admissions to which Dash never responded establish Dash's liability for sexual assault. The elements of a sexual assault claim under California law are as follows:

> 1.  That the defendant(s) (persons against whom the action is brought, intended to cause a harmful or offensive contact with plaintiff's "sexual organ, anus, groin, buttocks or breast", and a sexually offensive contact with plaintiff resulted, either directly or indirectly; [OR]
>
> That defendant(s) intended to cause a harmful or offensive contact with plaintiff by use of defendant(s)'s sexual organ, anus, groin, buttocks, or breast, and a sexually offensive contact with plaintiff resulted, either directly or indirectly; [OR]
>
> That defendant(s) "caused an imminent fear of a harmful or offensive contact" with plaintiff's sexual organ, anus, groin, buttocks or breast …
>
> 2.  Plaintiff did not consent to the touching; and
>
> 3.  Plaintiff was harmed or offended by defendant's conduct.

Cal. Civ. Code, §1708.5

"A cause of action for sexual battery under Civil Code section 1708.5 requires the batterer intend to cause a 'harmful or offensive' contact and the batteree suffer a 'sexually offensive contact.' Moreover, the section is interpreted to require that the batteree did not consent to the contact." *Angie M. v. Superior Court* (1995) 37 Cal.App.4th 1217, 1225.)

    1. Plaintiff's Declaration Describes The Sexual Assault That She Suffered.

The affidavit of Plaintiff establishes that Dash touched her sexually without her consent. Bunn's affidavit states as follows:

> 7. While I was at the Dash residence on April 18, 2019, in the late evening, Dash sexually assaulted me. While I was sleeping, Dash approached me and placed his hand on my breasts and placed his hands/fingers on my buttocks. I was awakened by his touching of me. Dash did not have my permission or my consent to touch my sexual organs. Dash was wearing an open robe and had no underwear on. Dash had been drinking alcohol and smoking marijuana all day.

> 8. Upon waking up due to the unauthorized touching by Dash, I was able to get Dash's hands off my breasts and buttocks. Dash backed up and asked me "what are you doing?" I responded and said "I am sleeping" and "I will fight you" to Dash. Dash then left the room.

> 9. I was angry and frustrated by Dash's offensive and unwanted touching. I stayed at the Dash

> residence and did not sleep that evening. I have
> suffered anxiety, sleepless night and emotional
> distress as a result of Dash's actions on April 18,
> 2019 since the incident, and have sought medical attention

(Bunn Affidavit, ¶7-9)

These actions by Dash unequivocally constitute a sexual battery and civil battery.

    2.  Dash's Failure To Respond To Requests For Admissions Constitutes Evidence Of Sexual Assault.

Bunn's evidence of sexual assault is further corroborated by Dash's failure to respond to the Request for Admissions.  Federal Rule of Civil Procedure 36 provides that -

> A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney.

F.R.C.P. 36(a)(3).  Admissions are the equivalent of sworn testimony.  *E.g., Ark.-Tenn Distributing Corp. v. Breidt*, 209 F.2d 359 (3d Cir. 1954); *United States v. Lemons*, 125 F.Supp. 686 (W.D.Ark. 1954); 4 *Moore's Federal Practice* 36.08 (2d ed. 1966 Supp).

Plaintiff served Requests for Admissions on November 16, 2020, making the responses due in December 2020.  Despite Dash's counsel's request for an

extension of time to respond, Dash never responded.   The Requests sought admissions of the following facts, among others:

1.  Admit that Dash was sued for sexual misconduct by Kristie Thompson.

2.   Admit that Dash was sued for sexual misconduct in the 1980s.

3.  **Admit that Dash touched the buttocks of Bunn in April 2019.**

4.  **Admit that Dash sought to have sexual relations with Bunn in April 2019.**

5.   **Admit that Dash was "high" on a substance on April 18, 2019.**

June 25, 2021, Affidavit of Christopher Brown, Exhibit 1 (emphasis added).

Plaintiff submitted these admissions to the Court in February 2021 as evidence in support of her motion for summary judgment on the conversion claim. (Docket Entry 111). Defendants did not respond to that motion for summary judgment or otherwise controvert Dash's admissions in any way (Docket Entry 118).  Plaintiff offered the admissions yet again as evidence in connection with the refiling of the motion for summary judgment on her conversion claim, which this Court granted in April 2021.  Even with a second bite at the apple, Dash did not take the opportunity to comment on or otherwise controvert these damning admissions in his opposition.

On February 27, 2021, counsel for Dash advised Plaintiff's counsel that he would seek relief from the admissions.  June 25, 2021 Affidavit of Christopher Brown, Exhibit 2.  However, nearly five months later, Dash has not sought such relief and fact discovery related thereto is now closed.  The evidence is in and it leads to only one conclusion - that Bunn is entitled to summary judgment on her claim of sexual battery/civil battery.

### C.   There Is No Disputed Issue Of Fact That Dash Caused Bunn Emotional Distress Relating To The Sexual Battery

A plaintiff is the direct victim of negligent infliction of emotional distress if (1) the defendant was negligent, and (2) as the result of the defendant's negligence, the plaintiff suffered emotional distress. *Molien v. Kaiser Foundation Hospitals*, 27 Cal.3d 916 (1980).

In this case, Dash engaged in a battery, and Bunn suffered emotional distress as a result.  Bunn explains in her Declaration that the trauma of the event has caused her stress, sleepless nights and anxiety.  She has sought medical attention from Dr. Jeffrey Pinsk.  Dr. Pinsk, an internist and the author of a book relating to PTSD and anxiety, has noted that Bunn suffers from PTSD, anxiety and other conditions as a result of the sexual assault (June 25, 2021, Affidavit of Christopher Brown, Exhibit 4, Report from Dr. Pinsk).

**D.** **Defendants Dash, Horn and Poppington Defamed Bunn By Accusing Her Of Criminal Conduct**

It is undisputed that Defendants defamed Plaintiff.[1] Under Pennsylvania law, "[d]efamation per se may consist of words imputing (1) criminal offense, (2) loathsome disease, (3) business misconduct, or (4) serious sexual misconduct." *Mallory v. S & S Publishers*, 260 F. Supp. 3d 453, 465 (E.D. Pa. May 9, 2017), aff'd sub nom. *Mallory v. Simon & Schuster, Inc.*, No. 17-2239, 2018 WL 1559926 (3d Cir. Mar. 29, 2018) (quoting *Clemente v. Espinosa*, 749 F. Supp. 672, 677 (E.D. Pa. 1990)). A defendant can only escape liability if he shows that his statements were "substantially true." See 42 Pa. Cons. Stat. Ann. § 8343(b)(1).[2] Words that are challenged as defamatory "must be construed in the context of the entire statement or publication as a whole, tested against the understanding of the average reader . . . ." *Aronson v. Wiersma*, 65 NY2d 592, 594 (1985). All relevant factors may be considered in determining whether a word or statement is defamatory. *Farber v. Jefferys*, 33 Misc 3d 1218[A], 2011 NY Slip Op 51966[U], *15 [Sup Ct, NY County 2011], affd 103 AD3d 514 (1st Dept 2013), lv denied 21 NY3d 858(2013), citing *Steinhilber v. Alphonse*, 68 NY2d 283, 291-292 (1986). Courts have

---

[1] In December, 2019-Janury 2020 after Dash was sued by Bunn, Dash published a video and post alleging that Bunn attempted to steal and rob from him. Bunn was in her home state when Dash posted the video on his social media.

[2] The analysis would be substantially the same under California law.

considerable discretion in deciding whether a statement is defamatory,

guided only by "the words themselves and their purpose, the circumstances

surrounding their use, and the manner, tone and style with which they are

used . . ." *Steinhilber*, 68 NY2d at 291-292).

Defendants posted the following about Bunn and Attorney Christopher

Brown on December 28, 2019.

In this case, after being sued by Plaintiff on December 26, 2019

(Docket Entry 1) for sexual battery and the conversion of her belongings,

Defendants posted a "movie" online on December 27, 2019, made in April

2019, in which he accused Plaintiff of trying to steal from him.  The full

video can be viewed at:

https://www.worldstarhiphop.com/videos/video.php?v=wshh521J2N5gO2ve

KXNi.  The video was seen over one million (1,000,000) times.



To be clear, there is no truth to the accusation that Bunn attempted to rob or steal from Dash. Not only does Bunn unequivocally deny Defendants' accusation of theft, Dash has admitted the falsehood by his failure to respond to the Request for Admission that stated "Admit that Bunn did not steal anything from the defendants in April 2019." F.R.C.P. 36.

The video was posted on Dash's and  Poppington's (damedashstudios) social media and provided to news outlets. Dash, Horn (who took part in the video) and Poppington are all responsible for defamation. Dash and Horn own Poppington.The video and posting was intended to defame Plaintiff. Plaintiff never tried to "rob" Defendants and was never "caught" doing so.  Defendants simply retaliated against Bunn for refusing Dash's sexual advances.  The defamation is clear and Bunn is entitled to summary judgment.

## E. Poppington and Horn Aided and Abetted The Sexual Assault Of Bunn Committed By Dash

Under California law, one can be liable as an aider and abetter of a negligent act. See *Navarrete v. Meyer*, (2015) 237 Cal.App.4th 1276, 1290 [188 Cal.Rptr.3d 623]; *Orser v. George*, (1967) 252 Cal.App.2d 660, 668 [60 Cal.Rptr. 708]. Section 876 of the Restatement Second of Torts provides: "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him, or  (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person." *Navarrete v. Meyer*, (2015) 237 Cal.App.4th 1276 [188 Cal.Rptr.3d 623];

*Cadlo v. Owens-Illinois, Inc.* (2004) 125 Cal.App.4th 513, 521 [23 Cal.Rptr.3d 1],

quoting *Chavers v. Gatke Corp.* (2003) 107 Cal.App.4th 606, 617 [132 Cal.Rptr.2d

198].) The doctrine is likened to aiding and abetting. (See *Saunders v. Superior

Court* (1994) 27 Cal.App.4th 832, 846 [33 Cal.Rptr.2d 438] [describing concert of

action theory under the Restatement as aiding and abetting]; *Fiol v.

Doellstedt* (1996) 50 Cal.App.4th 1318, 1325-1326 [58 Cal.Rptr.2d 308]

[referencing the Rest.2d Torts, § 876 in describing aiding and abetting

liability]; *Casey v. U.S. Bank Nat. Assn.* (2005) 127 Cal.App.4th 1138. Dash and

Horn are the owners of Poppington.  Horn facilitated the purchase of the airline

ticket that brought Bunn to California to provide photography services for

Poppington.  Bunn stayed in the home of Dash and Horn during her trip to

California. Poppington and Horn knew or should have known of Dash's sexual

history, including a sexual battery case involving Kristen Thompson, *K.T. v. Dash,*

2006 NY Slip Op 09393 [37 AD3d 107] December 14, 2006.  There was also a

sexual misconduct/rape lawsuit against Dash in 1987-1988, as reported by the

Washington Post (a widely circulated newspaper) entitled "Run For The Money".

See Exhibit 3, to the June 25, 2021 Affidavit of Christopher Brown. The article

published in October 2004 states as follows about Dash:

> And in 1987, according to court documents obtained
> by The Washington Post, he allegedly raped a 14-year-

old at a summer camp in New York. He was 16 at the
time. According to the civil lawsuit, Dash had been
"dismissed from the summer camp program . . .
because of his unruly conduct, aggressive behavior
and violence." The camper alleges in her complaint
that he returned to the camp, where he assaulted
and raped her.

https://www.washingtonpost.com/archive/lifestyle/style/2004/10/10/run-for-the-money/2b8d4ef9-a68c-4c32-a1e8-9f60163b3449/

Poppington and Horn knew or should have known of Dash's history and

aided and abetted Dash in his sexual acts of misconduct. Poppington and Horn

failed to keep Bunn safe and failed to engage in the minimum protection of Bunn,

such as booking Bunn a hotel room as opposed to forcing Bunn to stay in the

Dash/Horn home during the business trip.  "If the encouragement or assistance is a

substantial factor in causing the resulting tort, the one giving it is himself a

tortfeasor and is responsible for the consequences of the other's act." (*Cadlo*

(2004) 125 Cal.App.4th 513, 521 [23 Cal.Rptr.3d 1]. For this reason, Poppington

and Horn aided and abetted Dash and are responsible for his unlawful tort.

**F.** **The Dash Group LLC Is A Successor To Poppington LLC And Is Liable For Its Wrongdoing**

The Dash Group LLC is a successor-in-interest to Poppington LLC and is

therefore liable for its wrongdoings.  A corporation may have successor liability if:

(1) the successor corporation expressly or impliedly assumed the predecessor's tort

liability, (2) there was a consolidation or merger of seller and purchaser, or (3) the purchasing corporation was a main unsecured creditor had "adequately alleged a *de facto* merger" between a corporate defendant and a purported asset acquirer, held the U.S. District Court for the Southern District of New York when refusing to dismiss the defendants' "alter ego and *de facto* merger claims." *John Deere Shared Services Inc. v. Success Apparel LLC*, 2015 WL 6656932, at *5-7 (S.D.N.Y. Oct. 30, 2015) (Furman, J.). or (4) the transaction was entered into fraudulently to escape such obligations" (*Kasem v. BNC Stor., LLC,* 30 AD3d 469 [2d Dept. 2006]). No single indicator of succession is controlling. *Milliken & Co. v. Duro Textiles, LLC,* 451 Mass. 547 (2008).

The Dash Group LLC collects and maintains funds/assets due Poppington. The Dash Group LLC has received assignments of Poppington's assets without consideration.  See Exhibits 1-5 of the May 21, 2021 Affidavit of Christopher Brown, Docket Entry 133-7. For these reasons, and those in Section G below, The Dash Group LLC is responsible for the debt of Poppington.

## G.    Poppington LLC Has De facto Merged With The Dash Group LLC

The *de facto* merger doctrine imposes liability on The Dash Group LLC for the acts of Poppington because the entities operate as one. When a purported asset sale is, in substance, a consolidation or merger of seller and purchaser, courts will

treat it as a *de facto* merger. *Wellness International Network Ltd. v. Sharif*, 135 S.

Ct. 1932, 1939 (2015), *John Deere Shared Services Inc. v. Success Apparel LLC*,

2015 WL 6656932, at *5-7 (S.D.N.Y. Oct. 30, 2015) 2015 WL 6656932, at *6,

quoting *Schumacher v. Richards Shear Co.*, 59 N.Y. 2d 239, 245 (1983).

Moreover, "continuity of ownership is a necessary precondition to finding a *de*

*facto* merger." *Id.*

California is more willing to find *de facto* merger if the court concludes

notwithstanding the structure of the transaction, that an asset sale produces the

same result as a merger. California also recognizes the de facto merger doctrine in

successor liability cases. *Marks v. Minnesota Mining & Mfg. Co.*, 232 Cal. Rptr.

594 (1986).

The Dash Group LLC has obtained funds due Poppington LLC and has

received assignments from Poppington LLC relating to Poppington LLC accounts,

like Vimeo and placed the funds in the bank account at Chase for The Dash Group

LLC.  Dash and Horn own both entities and commingled them. See Exhibits 1-3, 5-

7 to the May 21, 2021 Affidavit of Christopher Brown (Docket Entry 133-7).

In this case, The Dash Group LLC is in possession of assets that belonged to

Damon Dash, Horn or Poppington LLC.   For example, on July 6, 2020,

Poppington received a wire in the amount of $83,333.33 from Yeezy Marketing

LLC.  See Christopher Brown Affidavit May 21, 2021, Exhibit 5.  The Dash Group LLC, since October 2020, is billing Yeezy Marketing LLC for the same services in the same amount.  See Exhibit 4 to the May 21, 2021 Affidavit of Christopher Brown.

The Dash Group LLC provided the Damon Dash invoice to Chase in December 2020 in an attempt to avoid a bank garnishment in *The Dash Group LLC v. Brooks*, 20-10671 (JSR).  The two (2) payments of $83,333.33 identified in the invoice appear at Exhibit 4, Id.  The invoice states as follows:

"Consulting Services-Damon Dash for Yeezy Marketing LLC".

For the avoidance of about, attached as Exhibit 6 and Exhibit 7 to the May 21, 2021 Affidavit of Christopher Brown (Docket Entry 133-7), are corporate documents indicating the common ownership of The Dash Group LLC and Poppington LLC by its two (2) members, Damon Dash and his girlfriend Raquel Horn.  Just as Poppington LLC assigned its Vimeo account to The Dash Group LLC in June 2020, Exhibit 1 to the May 21, 2021 Affidavit of Christopher Brown (Docket Entry 133-7), Poppington LLC assigned the Yeezy Marketing LLC account to The Dash Group LLC in October 2020, if not earlier.  Poppington LLC and The Dash Group LLC have merged and operate as one entity and are alter egos of each other.

19

The statements of Attorney Howard, counsel to The Dash Group LLC, during the January 25, 2021 hearing in *The Dash Group LLC v. Brooks*, 20-cv-10671 (JSR) (SDNY) establish that Horn and Dash use the funds of The Dash Group LLC as their personal slush fund.  Attorney Howard represented to the Honorable Judge Rakoff of the Southern District of New York,  the following about Poppington LLC and The Dash Group LLC at the January 25, 2021 hearing:

Page 14

> ...because Mr. Dash, via Raquel Horn, who is the
> member and controlling member of The Dash Group,
> has not been able to pay his ongoing child support,
> medical expenses, and college expenses for his
> children. So it is related, and I can provide the Court
> of that action, which is returnable in February,
> detailing when the payments stopped and from the
> accounts in which those payments were made. And it
> all flows from Raquel Horn via The Dash Group. Mr. Dash
> does not pay his child support directly. He literally has
> this set up from the beginning from his original company
> with Poppington and with the Rachel Roy Group. He gives
> irrevocable transfer of his interest to pay those entities, to
> pay his creditors, to pay his child support, and that's always
> been his setup.

Page 15

> MR. HOWARD: Okay. Eric Howard for the petitioner.
> Yes, your Honor. As I stated, Ms. Horn has a child
> with Mr. Dash. Further, she also pays Mr. Dash's child support
> and further support of his children, and further support of his
> children includes medical expenses as well as private school
> tuition, as well as college tuition, and that is readily

traceable, coming from Ms. Horn via The Dash Group.

The transcript of the hearing is attached Exhibit 8 to the May 21, 2021 Affidavit of Christopher Brown, Docket Entry 133-7.

There is clear and convincing evidence, that Poppington and The Dash Group LLC are related, merged and/or alter/ego entities and operate as one company.

### III.CONCLUSION

For the reasons stated above, Plaintiff is entitled to summary judgment on her claim for sexual assault, infliction of emotional distress, and defamation. Plaintiff requests a trial on damages.

MONIQUE BUNN
By Her Attorneys,
/s/ Dina Adham
Dina Adham, Esq.
Law Offices of Dina Adham
1230 Rosecrans Avenue, Suite 300
PMB #698
Manhattan Beach, CA 90266
(310) 384-0843
dadham@adhamlawgroup.com

Christopher Brown
Brown & Rosen LLC
100 State Street, Suite 900
Boston, MA 02109
617-728-9111

21

cbrown@brownrosen.com

June 25, 2021                                    *Counsel for Plaintiff*


## CONFERENCE

Counsel conferenced with Motion on May 14, 2021. The parties were unable to resolve the Motion. Defendants contend their actions as alleged cannot be proved and that the Plaintiff suffered no damages.

MONIQUE BUNN
By Her Attorneys,
/s/ Dina Adham
Dina Adham, Esq.
Law Offices of Dina Adham
1230 Rosecrans Avenue, Suite 300
 PMB #698
Manhattan Beach, CA 90266
(310) 384-0843
dadham@adhamlawgroup.com


Christopher Brown
Brown & Rosen LLC
100 State Street, Suite 900
Boston, MA 02109
617-728-9111
cbrown@brownrosen.com

June 25, 2021                                    *Counsel for Plaintiff*